# Commonwealth *v.* Norris, Appellant.

*Voluntarily permitting a prisoner to escape—Suffering escape through gross negligence—Evidence—Burden of proof.*

On the trial of an indictment for suffering a prisoner to escape through gross negligence, it is proper to permit the defendant to show such insecure condition of the jail when he took charge as Sheriff, as might have bearing on the prisoner's escape.

Where a defendant is indicted on two counts, growing out of the same occurrence, (1) for voluntarily permitting or suffering a prisoner to escape and (2) for suffering such escape through gross negligence, the Court should instruct the jury that they may find the defendant guilty on either count but not on both.

Where, in the trial of such indictment, it was admitted that the prisoner was in lawful custody of the defendant, it is immaterial whether he had been convicted or was only awaiting trial.

The Sheriff or keeper of the jail is not liable to criminal prosecution, unless he voluntarily permits or suffers the prisoner to escape or go at large, or unless he suffers such prisoner to escape through gross negligence. A prima facie case can not be made out by merely proving the escape of the prisoner. The Commonwealth must go farther and produce evidence sufficient to satisfy the jury, beyond a reasonable doubt, that the Sheriff voluntarily suffered or permitted the prisoner to escape or that such escape occurred because of the former's gross negligence.

*Criminal procedure—Trials Q. S.—Indictments—Evidence—Cross examinations.*

The sanction or approval of the Court of an indictment, pursuant to an information presented by the District Attorney, is not reversible on appeal, except for manifest and flagrant abuse of discretion.

Where an offer of proof is made which the court deems relevant and material testimony and therefore rules to be admissible, exception must be taken and error assigned to the questions propounded to the witness and his answers thereto. The court's ruling on the offer of proof can only be assigned as error when the offer has been rejected.

It is proper to admit evidence of other offenses when they furnish a motive for the crime for which the defendant is indicted, or are so connected that proof of one necessarily involves proving the other.

It is always the right of a party, against whom a witness is called, to show by cross examination that he has an interest direct or collateral in the result of the trial, or that he has a relation to the party from which bias would naturally arise. Such an examination goes to the credibility of the witness.

Whenever the motive, intent or belief of a party charged with the crime is in issue, it is competent for such party to testify directly

upon that point, and also to the facts and circumstances accompanying an act, which reasonably tends to repel an unfavorable inference which might be drawn from the act if unexplained. It was therefore error for the Court to exclude evidence of immediate measures taken by the defendant to recapture the prisoner.

*Trials Q. S.—Charge of the court—Errors of law—Necessity of request by counsel for instructions.*

Errors of law in a charge are not rectified by asking counsel if anything has been omitted or if there is anything that they desire the Court to refer to. It is only inadvertent misstatements of fact and objections to the insufficiency of a charge which are waived by silence of counsel in such circumstances.

*Appeals—Assignments of error—Practice of the Superior Court.*

Assignments of error which do not conform to the laws of the Superior Court will not be considered on appeal.

An assignment of error to the admission of evidence is fatally defective, if it is not founded on an objection taken in the Court below.

Argued October 22, 1925. Appeal No. 4, March T., 1926, by defendant from judgment of Q. S. Cameron County, April T., 1925, No. 1, on verdict of guilty in the case of Commonwealth of Pennsylvania v. John W. Norris. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Indictment for voluntarily permitting a prisoner to escape and suffering such escape through gross negligence in violation of the Act of March 31, 1860, P. L. 382. Before SMITH, P. J. 34th Judicial District, specially presiding.

The facts are stated in the opinion of the Court.

The jury returned a verdict of guilty on both counts. Judgment of sentence on first count. Defendant appealed.

*Errors assigned,* were various rulings on evidence, the charge of the Court and refusal of defendant's motion for a new trial.

*S. Y. Rossiter,* and with him, *T. P. Dunn,* for appellant, cited: Rowand v. Com., 82 Pa. 405; Rice's

Opinion Com. v. Sheppard, 20 Pa. Superior Ct. 419; Com. v. Bell, 4 Pa. Superior Ct. 187; Phila. v. Reeder, 173 Pa. 281; Wigmore on Evidence, Vol. 3, pages 713-714, 2d Edition; Com. v. Dattala, 77 Pa. Superior Ct. 320; Com. v. Amato, 82 Pa. Superior Ct. 149; Com. v. Viscuso, 82 Pa. Superior Ct. 403; Com. v. Nunamaker, 84 Pa. Superior Ct. 97.

*Charles J. Margiotti,* Special Assistant to District Attorney, and with him, *Fred A. Johnson,* District Attorney, for appellee, cited: Com. v. Stanley, 78 Pa. Superior Ct. 452; Com. v. Keegan, 70 Pa. Superior Ct. 436; Com. v. Coles, 265 Pa. 362; Com. v. Morrison, 266 Pa. 223; Com. v. Dumber, 69 Pa. Superior Ct. 196; Com. v. Shanor, 29 Pa. Superior Ct. 358; Com. v. Shields, 50 Pa. Superior Ct. 1; Com. v. Shoener, 25 Pa. Superior Ct. 526; Com. v. Allen, 135 Pa. 483; Com. v. Force, 43 Pa. Superior Ct. 363; Johns v. Pa. Railroad Co., 226 Pa. 319; Com. v. Bryson, 276 Pa. 566; 21 Corpus Juris, page 842, Section D. Com. v. Lenhart, 40 Pa. Superior Ct. 572; Com. v. Corcoran, 78 Pa. Superior Ct. 430; Com. v. Schoen, 25 Pa. Superior Ct. 211.

OPINION BY KELLER, J., December 14, 1925:

In 1924 John W. Norris, the appellant, was sheriff of Cameron County, and by virtue of his office, keeper of the county jail. On April 26, 1924 Joseph Pappallia, who had been regularly committed to await trial for violating the law prohibiting the manufacture, sale, etc., of alcoholic liquors for beverage purposes, escaped from jail. Appellant was accused of complicity in his escape and was indicted pursuant to an information presented by the district attorney, by leave of court. The indictment contained two counts. The first charged him with voluntarily permitting or suffering a prisoner (Pappallia) to escape, contrary to the provisions of section 5 of the Criminal Code (Act of March

31, 1860, P. L. 382), the second with suffering such escape through gross negligence, contrary to section 6 of said Code. He was convicted on both counts, but only sentenced on the first, and appeals from that judgment.

Many assignments of error have been filed. Some are not in conformity with our rules; others relate to rulings upon evidence, which must be disregarded, because the testimony has not been printed in full as part of the record, nor has the evidence material to the questions raised by the appeal been settled pursuant to Rule 55 and the Act of May 11, 1911, P. L. 279; and as to certain of the assignments of error the Commonwealth claims that the evidence material to their consideration has not all been printed. We are therefore confined to such assignments as are not affected by this failure to observe our rules.

We find no merit in appellant's complaint that the indictment was a district attorney's bill. It was presented by leave of court for misdemeanor in office and was therefore within the exception of Section 10, Art. I of the constitution. The sanction or approval of the court is not reviewable on appeal except for manifest and flagrant abuse of discretion, which is not present in the circumstances of this case: Com. v. Sheppard, 20 Pa. Superior Ct. 417, 419; Rowand v. Com., 82 Pa. 405, 408; Com. v. Green, 126 Pa. 531, 540.

The first assignment must be overruled. Where an offer of proof is made which the court deems relevant and material testimony and therefore rules to be admissible, exception must be taken and error assigned to the questions propounded to the witness and his answers thereto. The court's ruling on the offer of proof can only be assigned as error when the offer has been rejected. The printed record does not show the evidence produced in support of the offer, and we have no means of knowing how closely it followed the offer.

We may say, however, that it is proper to admit evidence of other offenses when they furnish the motive for the crime for which the defendant is indicted, or are so connected that proof of the one necessarily involves proving the other: Com. v. Coles, 265 Pa. 362; Com. v. Dumber, 69 Pa. Superior Ct. 196.

There is no merit in the fifth, sixth and seventh assignments. Pappallia was admittedly in lawful custody of the defendant, accused of crime. It was wholly immaterial whether he had been convicted or was only awaiting trial.

The tenth assignment of error we are obliged to sustain. One of the witnesses for the Commonwealth, Joseph Arceri, was a prisoner in the jail at the time of Pappallia's escape. He had been sentenced to serve six months and pay a fine of $500; and the defense was endeavoring to show, by cross-examination of the witness, that following his testimony against defendant before the grand jury which investigated the escape he had been released from jail at the expiration of his term without paying his fine or serving further imprisonment by reason thereof prior to his discharge under the insolvent laws, or without following the provisions of the Act of May 6, 1887, P. L. 86; that the district attorney was instrumental in securing his release upon his confessing judgment in favor of the county for $500 and that this judgment remained unpaid. The purpose of this cross-examination was to produce before the jury facts tending to discredit the witness' testimony by affecting his credibility and showing a relief from or mitigation of sentence as a result of his evidence against defendant. Our Supreme Court has said: "Whatever tends to show the interest or feeling of a witness in a cause is competent by way of cross-examination": Com v. Farrell, 187 Pa. 409, 423. This was followed by our court in Com. v. Emmett, 74 Pa. Superior Ct. 86, where the court

below excluded questions propounded to a witness for the Commonwealth tending to show his hatred or ill will against the defendant and we said, speaking through our brother Henderson: "When it is considered that the Commonwealth's case depended on the credit given to the witness, the relevancy of the inquiries tending to show ill will, bias and motive to affect his credibility is apparent. Whatever tends to show the interest or feeling of a witness is competent by way of cross-examination" p. 90. A party may always put such questions to a witness, on cross-examination, as tend to show his favor or bias towards the party calling him: Ott v. Houghton, 30 Pa. 451. In the comparatively recent case of Lenahan v. Pittston Coal Mining Co., 221 Pa. 626, 629, our Supreme Court said: "It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial or that he has a relation to the party from which bias would naturally arise. Such an examination goes to the credibility of the witness. The right is not to be denied or abridged because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other party. This chance the party takes when he calls the witness." On the retrial of the case this principle should be remembered by the prosecuting attorney in connection with the testimony of Pappallia. Objections were made by him and were sustained by the court below to a number of questions on cross-examination which tended to show ill will or malice against the defendant, and which should have been allowed. Those assignments are not sustained only because of the Commonwealth's objecto the record brought up for review. The court below took too narrow a view of the limits of cross-examination in this respect.

We are likewise constrained to sustain the thirteenth and sixteenth assignments of error. As bearing on

the charge of voluntary escape the defendant offered to show the steps taken by him, immediately following Pappallia's escape, to effect his capture and return. These were rejected by the court below as being in the nature of self-serving declarations; but later, his acts up to midnight of the day of escape were admitted as part of the res gestæ. The learned court below misapprehended the nature of the offer. The defendant was not seeking to give evidence of mere declarations but of his acts immediately following the escape and carried on continuously during the next day which were inconsistent with his being a party to the escape and hence were relevant and material to the issue. "There is a distinction, which it appears to me is not sufficiently attended to, between mere statements made by and to witnesses, that are not receivable in evidence and directions given and acts done by words, which are evidence": Erle, J. in R. v. Wilkins, 4 Cox Cr. C. 92. To constitute the crime of voluntary escape the act must be done by the officer *malo animo,* otherwise it is at most only a negligent escape. "It is a crime in which the intention to do wrong is one of the fundamental and essential ingredients": Meehan v. State, 46 N. J. L. 355, 358. "It follows that if a material part of the crime is the intention, the defendant may introduce any testimony that throws light on it": Com. v. Gormley, 77 Pa. Superior Ct. 298, 303. Thus in an early edition of Archbold's Pleading and Practice in Criminal Cases, p. 305, speaking of a negligent escape, the author says: "But if the escape were not in fact negligent, if [the prisoner] by force rescued himself, or were rescued by others and *the defendant made fresh suit after him, but without effect, all this must be shown upon the part of the defendant."* To the same effect see 26th Edition, p. 1174. "Whenever the motive, intention or belief of a party charged with a crime is in issue, it is competent for such party

to testify directly upon that point, and also to the facts and circumstances accompanying an act, which reasonably tend to repeal an unfavorable inference which might be drawn from the act if unexplained'': Com. v. Hazlett, 14 Pa. Superior Ct. 352, 369. In a prosecution for burning a building to get insurance money, it was held proper to admit evidence showing efforts made by the defendant to put out the fire immediately after its discovery by him. ''The fact that he might feign conduct for the purpose of deceiving the bystanders would not determine the question of its competency. If he had fired the buildings the less likely he would be to burn himself in fighting the fire and his conduct and acts at the fire might be very significant in the eyes of the jury upon that question'': State v. Ward (Vermont) 17 Atl. 483, 487. See also People v. O'Neil, 122 N. Y. 355, 19 N. E. 796, 800. In Tompkins v. Saltmarsh, 14 S. & R. 275, action was brought by Saltmarsh against Tompkins, to recover the value of certain bank bills which the latter had agreed to carry as a voluntary bailment and deliver to the plaintiff at Athens, Pa., and of which he claimed to have been robbed on the way. The Supreme Court said (Duncan, J.): ''I am of opinion, likewise, that evidence ought to have been received of the hue and cry immediately after the discovery; his assiduous and indefatigable pursuit and strict search, both at the inn and the steamboat. If he had made no complaint or no inquiry, remained with his arms folded and his mouth shut, this would have afforded strong evidence of his delinquency; and though it has been said this would have been the course of a guilty man, yet it was one which an innocent man would naturally take, and which, if he did not take, all would condemn him. Nothing would more strongly prove his neglect than this silence, this indifference—the jury would have drawn the most unfavorable conclusions from it. The next best evi-

dence to proof of a thing itself is proof of those circumstances which naturally would attend it; these were the production of the cut valise, the immediate promulgation of the theft and pursuit of the property. It has been said this is the party making evidence for himself: it is not; but evidence of circumstances immediately preceding and directly following the stealth [theft] ...... Had Tompkins been indicted for purloining this money, surely this conduct could be received in his exculpation; for no man would be the bearer of a letter with money at the risk of reputation and property, if he were obliged to prove that his trunk was broken open or his valise cut open by witnesses who saw the act done......... The deposition of Upson, with the letter annexed...... ought to have been admitted, and likewise the deposition of Abisha Jenkins, to show the concomitant acts and declarations of Tompkins, immediately before and after the loss ........ It was for the jury to say, whether these declarations and searches were colorable, and not honestly made; and whether all this anxiety was affected, and not real, to cover a fraud.''

The Supreme Court of Mississippi, in a case very similar in its facts followed Tompkins v. Saltmarsh, supra. See Lampley v. Scott, 24 Miss. 528, 534. See also Rhodes v. Com., 48 Pa. 396, where the Supreme Court reversed the court below for refusing to allow the constable to be cross-examined as to what explanation the defendant had given when he was searched and money found on him. ''If the Commonwealth would have the fact in evidence that the constable found the money, they were bound to take it in connection with the instant explanation of the prisoner'' (p. 401).

If this defendant had taken no steps to apprehend the escaped prisoner, evidence of such non-action would have been admissible as bearing upon his guilt of the charge of voluntarily suffering an escape; such inac-

tion would have been inconsistent with the defendant's innocence. When immediately following an escape the jailer takes vigorous and active measures to recapture the prisoner, such action, being inconsistent with his participation in the escape, should be admitted as evidence on his behalf. It bears directly on the question of his guilt or innocence, and its effect, whether evidencing a genuine or only a sham pursuit is for the jury.

Assignments 14 and 15. The reports of the grand jury are not printed. Without them we cannot pass on the questions raised by these assignments.

We are not certain that the complete record relative to the seventeenth assignment is before us. If it is, it should be sustained. The defendant was entitled to show the insecure condition of the jail when he took charge as sheriff on January 7, 1924 and that such condition continued up to the date of the escape. It is not the duty of the sheriff to repair the jail so as to make it secure against a prison breach. That obligation rests on the county as the agent of the Commonwealth. The evidence, of course, should be confined to such defective condition of the jail as might have bearing on Pappallia's escape.

Nineteenth Assignment. In charging the jury, the learned trial judge used this language: ''And you will take into consideration in passing upon the credibility of the witnesses that the defendant is directly interested in this case to the extent that his liberty is at stake, and in passing upon the credibility of the witnesses you will take into consideration whether their testimony is believable or not believable under all the circumstances and the interest the defendant has in securing his acquittal, not necessarily that the defendant has or would directly falsify, for the reason that he is presumed to be innocent and he goes upon the witness stand and it may be necessary for the defendant in

order to satisfy you when the burden has been sustained by the Commonwealth required of it, to defend himself and satisfy you that the Commonwealth's theory is untrue and that he is not guilty; nevertheless you take that into consideration.'' We confess that we do not understand just what was intended to be conveyed by this language, but we can readily see that a jury might very easily be misled by it—might conclude from it, that when the Commonwealth had met the burden required of it and made out a prima facie case sufficient to take the case to the jury, it was their duty to convict unless the defendant ''satisfied'' them that the Commonwealth's theory was untrue and proved himself not guilty. No such burden rested on the defendant in this case at any stage of the trial. The burden of proving the defendant guilty beyond a reasonable doubt of the offenses for which he was indicted was on the Commonwealth and rested on the Commonwealth throughout the trial. That burden never shifted: Com. v. Chester, 77 Pa. Superior Ct. 388; Com v. Viscuso, 82 Pa. Superior Ct. 403. The defendant was not obliged to ''satisfy'' the jury that he was not guilty; he was entitled to an acquittal unless the Commonwealth satisfied the jury beyond a reasonable doubt that he was guilty: Com. v. Nunamaker, 84 Pa. Superior Ct. 97; Com. v. Wilson, 266 Pa. 236. Errors of law in a charge are not rectified by asking counsel if anything has been omitted or if there is anything that they desire the court to refer to. It is only inadvertent misstatements of fact and objections to the *insufficiency* of a charge which are waived by the silence of counsel in such circumstances.

Nor is there any merit in the suggestion of counsel for the appellee that when the Commonwealth proved an escape, the burden rested on defendant of proving himself innocent; that he had the burden of an affirmative defense. There is good authority for the proposi-

tion that at common law when an escape was proven the law implied negligence on the part of the officer, and it was not necessary to produce affirmative proof of negligence in order to convict. Several text writers and compendiums or digests, cited by appellee, have so far confused the criminal responsibility of the sheriff with his civil liability for the escape of a person imprisoned for debt as to lay down the proposition, as applicable to a criminal prosecution, that when an escape has been shown to the satisfaction of the jury they should find the sheriff guilty unless he proves to their satisfaction that such escape was caused by the act of God or other irresistible force; a proposition, which as respects the criminal responsibility of the sheriff is supported by no authority except one case, Shattuck v. State, 51 Miss. 575, (1875), which admittedly based its ruling on civil cases. No English authority was cited in support of it and it never was the law of this State. The rule as to the sheriff's civil responsibility was set forth in Green v. Hern, 2 P. & W. 167 and was distinguished from his criminal liability, (p. 170), and the reason for the rule explained. At common law a voluntary escape amounted to the same offense and was punishable in the same degree as the offense of which the prisoner was guilty and for which he was in custody: 1 Hale's Pleas of the Crown 589, 590; 4 Blackstone's Comm. 130. It did not apply to imprisonment for debt.

Our criminal code, however, has made marked changes. The sheriff or keeper of the jail is not liable to criminal prosecution unless (1) he voluntarily permits or suffers the prisoner to escape and go at large, or (2) unless he suffers such prisoner to escape through *gross* negligence. A prima facie case can no longer be made out by merely proving the escape of a prisoner. The Commonwealth must go further and produce evidence sufficient to satisfy the jury beyond

a reasonable doubt that the sheriff voluntarily suffered or permitted the prisoner to escape or that such escape occurred by reason of the former's gross negligence. The nineteenth assignment is sustained.

Twentieth Assignment. The court instructed the jury that they might find the defendant guilty on either or both counts. It is a little difficult to see how the defendant could be guilty on both counts growing out of the same occurrence. If the escape was made with the defendant's aid and assistance, he was guilty on the first count and not guilty on the second. If it occurred in consequence of the defendant's gross negligence, he was guilty on the second count and not on the first. We would not reverse the judgment on this assignment because the defendant was sentenced on only one count and there was ample evidence to sustain that count. But on the retrial the jury should be instructed that they may find the defendant guilty on either count, but not on both.

The other assignments are dismissed for the reasons hereinbefore mentioned.

The judgment is reversed and a new trial awarded.