Commonwealth of Pa. *v.* Girardot, Appellant.

Argued October 17, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-
HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*S. Y. Rossiter,* for appellant, cited: Logan v. U. S.,
143 U. S. 263; Wagner v. Aulenbach et al., 170 Pa. 495;
Commonwealth v. Dibella, 72 Pa. Superior Ct. 360.

*Mortimer E. Graham,* District Attorney, and with him
*William F. Illig,* Assistant District Attorney, for ap-
pellee, cited: Commonwealth v. Bingle, 62 Pa. Superior
Ct. 105; Commonwealth v. Deutsch, 72 Pa. Superior
Ct. 299; Commonwealth v. Jermyn, 101 Pa. Superior
Ct. 455.

OPINION BY KELLER, J., December 16, 1932:

Girardot, Kauffman and Cornell were jointly in-
dicted, charged with conspiracy to cheat and defraud
certain insurance companies. Girardot was the local
manager of the General Adjustment Bureau, a cor-
poration acting for insurance companies in the adjust-

ment of losses by fire. Kauffman was in the real estate and insurance business. Cornell was a 'lay figure' used by the other two in furtherance of the conspiracy, which broadly speaking consisted in over-insuring certain buildings and their contents, burning them, and collecting the insurance as valid claims from the insurance companies. Kauffman pleaded 'nolo contendere.' Cornell was acquitted. Girardot was convicted, and appeals from the sentence imposed on him.

Five questions, raised by the appeal, will be discussed.

(1) Appellant complains of the refusal of his sixth and seventh points. Kauffman, an alleged co-conspirator, McMasters, who held a mortgage on one of the properties, and Ann Viney, the record owner of one of the properties, all testified for the Commonwealth. Appellant's fifth point. ''Louis Kauffman having testified that certain of the defendants had participated in a crime with him has assumed the position in law of a self-confessed criminal,'' was affirmed by the court. This was followed by the sixth point. ''If you find from the evidence that any of the other of the Commonwealth's witnesses have participated in the crime they [you?] are then justified in finding that such person or persons in the eyes of the law is a self-confessed criminal,'' which was refused. The fact that the jury might find that a witness for the Commonwealth had participated in the crime, and thus was an accomplice, would not make him or her a ''self-confessed criminal.'' Neither McMasters nor Miss Viney had admitted participation in the crime. The language of the point was too broad and was properly refused. The seventh point which related to the testimony of the witnesses referred to in the sixth point, was likewise too broad, in that it assumed that the witnesses were self-confessed criminals, and was properly refused. The charge of the court and the answers to the other points, notably

the eighth, ninth, tenth and eleventh, were such as to leave no doubt in the minds of the jury as to the caution, careful scrutiny and critical examination which should be given by them in considering the testimony of accomplices, and the corrupt source from which it came. The court is only required to answer the points as submitted. It is not its duty to remould them; and when the law has been correctly stated in the charge and answers to points as presented, the defendant has no just cause for complaint.

(2) He assigns as error a certain excerpt from the charge, as follows: ''Now when a conspiracy has been shown, then and then only the acts and declarations of a conspirator in furtherance of a common purpose are evidence not only against himself—against the person making the statement—but also against his associates in the conspiracy agreement; but community of design and interest must be established before you should accept the acts of one conspirator against the others.'' He admits that the first part correctly states the law, but complains of the insufficiency of the last clause, on two grounds: (a) Because it did not limit the effect of such declarations of a co-conspirator to those made during the course of the conspiracy, excluding those made after its termination; and (b) because the words 'community of design and interest' were not all that was required to establish a conspiracy. The complaint is not well-founded.

As to the first of these contentions, the conspiracy did not terminate with the fire; it existed afterwards, until the last insurance payment was collected. A review of the evidence fails to show any acts or declarations of his alleged co-conspirators' occurring after the termination of the conspiracy, which were received in evidence against Girardot. His own acts and declarations were admissible against himself; and the direct evidence of Kauffman does not come within the rule

as to "declarations of conspirators." The admissibility of such declarations, made to third parties, (Com. v. Strauss, 89 Pa. Superior Ct. 82, 91; Com. v. Deutsch, 72 Pa. Superior Ct. 298, 309), is an exception to the rule excluding hearsay evidence (I Greenleaf on Evidence, Secs. 99 and 111) , and it has no application to the direct evidence of a co-conspirator on the trial. In these circumstances if the appellant desired special instructions on the point as matter of law he should have requested them from the court: Com. v. Strauss, 89 Pa. Superior Ct. 82, 94.

As to the second, it is long established that a charge will not be judged by an isolated excerpt, where as a whole the law is correctly stated. The charge of the court correctly defined a criminal conspiracy and left no doubt in the minds of the jury that active participation by Girardot in the fraudulent acts committed pursuant to the conspiracy had to be proved beyond a reasonable doubt, before he could be convicted and that the fact of his having joined in the conspiracy to defraud must be so established before the acts and declarations of his co-conspirators could be used as evidence against him. So understood, the clause complained of is not ground for reversal. See Com. v. Bingle, 62 Pa. Superior Ct. 105; Com. v. Deutsch, supra, p. 310; Com. v. Jermyn 101 Pa. Superior Ct. 455, 465.

(3) Appellant also complains that the court in its charge, after referring to Kauffman as an accomplice, and warning the jury that the testimony of an accomplice should be received with caution by the jury and carefully scrutinized by them before giving it much weight, went on to say, "You may find that perhaps another witness in the case in reality has the status of an accomplice," contending that more than one of the other witnesses could have been found to be accomplices. The answer to this contention is that the

court, on having its attention directed by appellant's attorney to the matter, adopted the suggestion as follows: "If you find that not only these three defendants but others who may have appeared here as witnesses in this case, were really co-conspirators, then those also, even though they were not named as defendants, would have the status of accomplices, and, of course, the rule that I have indicated as to your estimate of their testimony applies." This is just what was contemplated by section 2 of the Act of May 11, 1911, P. L. 279, as amended by the Act of May 24, 1923, P. L. 439. The error or oversight of fact in the charge, if there was any, was called to the attention of the court and immediately rectified to comply with the appellant's suggestion. Appellant's complaint as to the insufficiency of the charge with respect to the warning to be given the jury of the danger of a conviction on the uncorroborated testimony of an accomplice, while not, in our opinion, justified, is not of great moment in the case, for there was corroboration in matters connecting Girardot with the offense: Com. v. Emmett & Middlecamp, 74 Pa. Superior Ct. 86, 92.

(4) The tenth assignment of error is directed to the offer of the district attorney to prove matters relating to the conspiracy which occurred more than two years prior to the finding of the bill of indictment. Passing by the impropriety of assigning as error an *offer of proof* which the court on objection decided to receive (Com. v. Norris, 87 Pa. Superior Ct. 66, 69), and treating the matter as if the *evidence admitted* under the offer had been assigned, we find no error in the court's ruling. It is in accord with the decisions of the Supreme Court and of this court, respectively, in Com. v. Bartilson, 85 Pa. 483, 489; Com. v. Rothensies, 64 Pa. Superior Ct. 395, 405; and Com. v. Sanderson, 40 Pa. Superior Ct. 416, 473. In the Bartilson case, speaking through Mr. Justice Paxson, the Su-

preme Court said: "The fact that a conspiracy existed on the 21st day of May, 1877, or upon any other day within two years of the exhibiting of the bill of indictment, may be shown by the previous acts, conduct or declarations of the parties. The Statute of Limitations affects the crime, not the proof of it ...... Acts and declarations of the parties prior to the statutory period may be given in evidence, provided they tend to show a conspiracy existing at the time charged in the indictment. It is true they would not be admissible for the purpose of proving a distinct crime barred by the statute. But where in conspiracy an overt act is done within two years, and said act is but one of a series of acts committed by the parties, evidently in pursuance of a common design and to carry out a common purpose, such acts would be evidence, provided they tend to show that the last act was a part of the series and the result of an unlawful combination; and such evidence may satisfy a jury of the existence of a conspiracy at the later period. And this though some of the prior acts may have occurred at a time when, as an independent conspiracy, it would have been barred by the statute. For, as before said, the overt acts are the evidence from which a conspiracy may be inferred."

(5) The court fairly left to the jury to find whether the various fraudulent acts relied on by the Commonwealth as evidence of the conspiracy alleged in the indictment formed separate conspiracies or were only separate and distinct parts of one conspiracy, and instructed them that before they could find the defendants guilty under the form of the charge in this indictment they must find that the acts charged in the indictment, the defrauding of the four insurance companies following the two fires, were a part of one conspiracy, and that there was not a separate, new and distinct conspiracy agreed upon by the defendants as

to each fire and as to the defrauding of each of the two groups of insurance companies who had insurance on the properties. There was evidence to support the Commonwealth's contention that they were all parts of one conspiracy; in fact, the evidence is convincing to us that such was the fact. The jury having adopted the view of the Commonwealth, we find no ground for reversal on that score.

We do not think the other matters raised by the appellant in his assignments of error require special discussion by us. We have considered them carefully and find no reversible error in them.

The assignments of error are all overruled. The judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.