## GENERAL BAKING CO. v. UNITED STATES.

### Civ. A. No. 9955.

United States District Court
E. D. Pennsylvania.

April 30, 1952.

Robert A. Detweiler, Philadelphia, Pa., J. Paul Erwin, Philadelphia, Pa. (As to counterclaim), for General Baking Co.

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for United States.

FOLLMER, District Judge.

This action is brought by General Baking Company under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., to recover for damage to its truck, which was sustained in a collision with a truck owned by the defendant. The United States has counterclaimed for the damage to its truck.

The facts are:

■ One William L. Mars was, on February 24, 1949, the driver of a Ford truck commonly known as a "snub nose" or "flat front" owned by the General Baking Company. He was traveling west, in the westbound lane, on Route 40, in the State of New Jersey, toward Camden, New Jersey, at a speed between thirty-five and forty miles per hour. One Alfred Newell was driving a 1948 half ton Ford truck owned by the United States Navy, in an easterly direction on Route 40 in the direction of Medford, New Jersey. At a point a quarter of a mile from the Baking Company truck he veered over into the westbound lane and returned to his own lane where he remained until within two hundred feet of the Baking Company truck when he again veered suddenly into the westbound lane. The driver of the Baking Company truck applied his brakes, causing the rear of his truck to veer in a semicircle to the right, so that after the collision the truck was crossways in its own westbound lane with the front bumper on or slightly over the center line.

The Baking Company truck did not travel beyond the point of collision. The Navy truck at the time of impact was veering back into its own eastbound lane. The point of contact was with the left front of the Baking Company truck. The Navy truck continued on for a distance of fifty feet before it came to rest on its top, off the road. The driver of the Navy truck was negligent in crossing over into the westbound lane in the path of the oncoming Baking Company truck. There was no negligence on the part of the driver of the Baking Company truck. The damage sustained by General Baking Company is $400; the damage to the Navy truck is $815.

### Discussion

As to the negligence of the driver of the Navy truck, there is convincing testimony by one William Lamon, a disinterested witness. He had been following several hundred feet behind the General Baking Company truck for six or seven miles, at a speed of between thirty-five and forty miles per hour. He saw the Navy truck approaching from the other direction. He stated: "I saw him pull over into the westbound lane in front of the Bond truck[1] and then I lost sight of him, and the next I saw of him was it was just about the time of impact when he came out from behind the front end of the Bond truck, rolled over on his right side and landed upside down against the pole.", and "at the time of the impact is when he attempted to get back in his own lane; I just saw his nose go out and heard the crash and he rolled over." The Baking Company truck was high roofed and obscured his vision of the Navy vehicle after it crossed over on to the westbound lane. As to the Baking Company truck, this witness states: "The Bond truck was approximately two feet from the center line of the highway" and "He was on his own side of the highway at all times.", and that after the accident "He was turned almost crosswise on the highway and his front end was slightly over the center line."

A report made by a State trooper, now deceased, was admitted, only, of course, in so far as the physical facts shown therein

1. The Baking Company truck had a "Bond" bread sign on its sides.

might have a bearing upon the case. His report shows that he found no skid marks, that the rear of the Baking Company truck had traveled to the right in a semicircle and came to rest off the road, on a dirt shoulder; that travel of the Navy truck after impact was unknown, only that it "was overturned with the front facing the pole" and that it "traveled 50' after impact," and that there was broken glass and dirt in the east lane.

All of this is, however, consistent with the other facts. Taking into account the nature of the damage to the left front of the Baking Company truck which evidences a glancing blow, the position of the Baking Company truck as it swung around with any possible slight forward motion in connection therewith, the speed of the Navy truck as evidenced by the distance traveled and the subsequent overturning thereof, it is apparent that the direction of the momentum and propelling force would account for the position of the front of the Baking Company truck[2] and the position of glass and dirt on the highway.

■ It is argued that the witness Lamon was not noticed by the driver of either truck and that this coupled with the fact that he did not stop and identify himself at the time discredits his testimony. He was a huckster, had been down to Barnegat, New Jersey, for "a load of fish to take out and peddle," and it was apparent no one was injured. He testified, "I was going to ignore the whole thing because at the time of the accident the two drivers started arguing and went off and nobody asked me for my name then, so I got in my own vehicle and went to Camden." This was a natural and consistent sequence.

■ Even if we accept the contention that when the driver of the Baking Com-pany truck applied his brakes the front of the truck swerved across the center line, it would not alter the situation. The only reason for applying the brakes at that time was a sudden emergency created by the negligence of the other driver. He found himself in a position of peril through no fault of his own. This is not the type of case where an approaching driver is weaving back and forth or otherwise acting so erratically as to put another driver on notice. When Mars, driving the Baking Company truck, first saw the Navy car it was partly on the wrong side of the road and a quarter of a mile away. It moved back to its own side and continued to approach on its own side. This is a common occurrence when a driver, seeing a car approaching some distance away, realizes that he is too far over to the left of the road and returns to his side. Mars had a right to assume that the Navy truck would, in obedience to the rules of the road, stay on its own side until something occurred to make him think otherwise.[3] Unfortunately, the contemplated further action of a person causing an emergency is not usually known to the person faced with the emergency and subsequent events may show that choosing some other course of action would have been more advantageous. Consequently, the law does not require a non-negligent automobile driver to adopt the safest course or use the best judgment in an emergency.[4]

■ One additional matter calls for comment. At the trial the record of a proceeding against one of the parties before a Justice of the Peace with relation to the accident was offered in evidence, and objection thereto made. Such evidence is inadmissible,[5] and the objection to the admission

2. The Trooper's report does not state the position of the front of truck with relation to the center line. Another witness placed it on the line.

3. Car & General Ins. Corp. v. Keal Driveway Co., 5 Cir., 132 F.2d 834.

4. Maragakis v. United States, 10 Cir., 172 F.2d 393; Zurcher v. Pittsburgh Railways Company, 353 Pa. 212, 44 A.2d 581; Silfies, Adm'x v. American Stores Company, 357 Pa. 176, 53 A.2d 610; Huddy Cyclopedia of Automobile Law (9th Ed.), Vol 3-4, Page 348, § 182 (citing New Jersey as in accord); Dubrock v. Interstate Motor Freight System, 3 Cir., 143 F.2d 304; Oklahoma Natural Gas Co. v. McKee, 10 Cir., 121 F.2d 583; Gross v. Gross, 7 Cir., 169 F.2d 199.

5. Bobereski, Adm'r v. Insurance Co. of State of Pennsylvania, 105 Pa.Super. 585, 161 A. 412; Wingrove v. Central Pennsylvania Traction Co., 237 Pa. 549, 85 A. 850; Stein v. Schmitz, 137 N. J.L. 725, 61 A.2d 260, 262.

thereof must be and is accordingly sustained.

### Conclusions of Law

1. Jurisdiction is vested in this Court by virtue of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

2. The negligence of the driver of the vehicle owned by the United States was the proximate cause of the collision.

3. The driver of the vehicle owned by the General Baking Company was not negligent.

4. General Baking Company is entitled to recover damages against the United States in the sum of $400.

5. The United States cannot recover damages on its counterclaim.

Judgment will be entered accordingly.